No. 33,036

CITIZENS STATE BANK, by Charles W. Johnson, Receiver, *Appellee,*
v. HARRY YOUST, *Appellant.*

No. 33,037

CITIZENS STATE BANK, by Charles W. Johnson, Receiver, *Appellee,*
v. GEORGE FULKERSON, *Appellant.*

(62 P. 2d 917)

Opinion filed December 12, 1936.

*Carl Van Riper,* of Dodge City, for the appellants.
*Ray H. Calihan,* of Garden City, for the appellee.

The opinion of the court was delivered by

THIELE, J.: The receiver of a failed state bank brought an action against Youst to recover his statutory liability as a stockholder. Youst answered, and thereafter plaintiff was given judgment on the pleadings. The defendant Youst appeals. The appeal by Fulkerson arises in the same manner, and will not be separately discussed.

Plaintiff's petition, filed in October, 1934, alleged the incorporation of The Citizens State Bank of Cimarron; that it became insolvent in 1932; that Chas. W. Johnson was appointed and qualified as receiver; that he has determined assets are insufficient to pay liabilities; that Youst, at the time of the bank's insolvency and at the time of filing the petition, owned six shares of the capital stock

of the par value of $100 per share, and is indebted to plaintiff in the sum of $600 under the terms of R. S. 9-110, and that demand for payment had been made and refused.

On November 6, 1934, defendant filed his answer as well as a motion to have certain persons named as additional parties defendant. In his answer defendant admitted the organization of the bank and that Johnson was its receiver, and denied generally. He then alleged that on January 12, 1932, there was issued to him a certificate for six shares of stock and that such issuance and the acceptance of the certificate by him was procured by fraud, on account of which he "does hereby repudiate and rescind the same and tenders into court the said certificate of stock," etc. The fraud alleged was that Ralph Lee Wagner and his brother John E. Wagner owned certain shares, including those subsequently issued to defendant; that about January 8, 1932, certain persons, including defendant, attended a meeting in Cimarron at which "a bank examiner by the name of Emery appeared and as the representative and agent of said Ralph Lee Wagner and John E. Wagner," stated and represented that the bank was in need of ready money; that its reserve was too low; that it had in its assets certain bad paper of about $12,000 which should be removed, and that if the same was removed and cash substituted it would place the bank in solvent and sound condition and give it abundant cash to carry on its business in a proper manner, and that the Wagners would surrender all of their stock without consideration and that it would be reissued to defendant and others if they would pay in the $12,000. On the following day, another meeting was held and the matter was again considered. On the evening of that day, a third meeting was had and Emery "again solicited on behalf of said Ralph Lee Wagner and John E. Wagner" that defendants and others present raise and pay into said bank the sum of $12,000, and that defendant and others, believing and relying upon the representations and statements, agreed to and raised $22,000 and paid it to the bank; that the Wagner stock was canceled and new stock issued and this defendant received six shares. Defendant further alleged that the representations of Emery on behalf of the Wagners were false; that notwithstanding the payment of the $22,000, the bank was still insolvent and unsound and was turned over to the bank examiner (not named) and into possession of plaintiff on December 5, 1932; that defendant did not learn of the fraud until two or three months

after December 5, 1932. It was further alleged that John E. Wagner had died intestate, leaving certain named persons as his heirs. The prayer of the answer was that the plaintiff take nothing, that the stock transaction be canceled, rescinded and set aside and the defendant be held not to be the owner of the stock and not responsible for the statutory liability thereon, and that the court should determine to whom defendant should assign the stock.

The trial court denied the motion to have the additional persons made defendants.

Plaintiff's motion for judgment on the pleadings was allowed and judgment was rendered in his favor and against the defendant, and this appeal follows.

The principal question presented is whether, after a state bank has been taken in charge by a receiver, a stockholder may rescind a purchase of stock made prior thereto and thus avoid payment of his statutory liability. Before proceeding, we call attention to the fact that in defendant's answer there is no allegation that the Wagners had any connection with the bank except as stockholders; no allegation that in the stock transaction anyone pretended to represent the bank; no allegation that in the interim between January 12, 1932, the date defendant became a stockholder, and December 5, 1932, date of receivership, there was no change in persons constituting depositors and creditors of the bank nor of the amounts due to them, nor is there any direct allegation the bank was insolvent when defendant became a stockholder.

The effect of insolvency of a corporation as barring a stockholder's right to rescind his subscription on the ground of fraud has been often considered. In England the rule seems settled that after either voluntary or involuntary proceedings in liquidation have been commenced, a stock subscription may not be repudiated on the ground of fraud (16 A. & E. Ann. Cas. 181). In an annotation on the subject in 41 A. L. R. 674 *et seq.*, the same English rule is stated, and it is stated the American cases on the subject are in confusion, the majority of our courts holding that insolvency of a corporation does not, of itself, cut off the right of a defrauded stockholder to escape liability. But in many of the cases where the English rule is not followed, recovery has been denied on various grounds, such as estoppel, lack of diligence in discovering the fraud, acceptance of dividends, etc. (See, also, annotation in 51 A. L. R. 1203, and 7 R. C. L. 241.)

It must be borne in mind the case before us involves not a subscription to stock but the statutory or superadded liability incident to ownership of bank stock under R. S. 9-110, and a liability which it is the duty of the receiver to collect. (R. S. 1933 Supp. 9-156.)

In *State Savings Bank v. Allen,* 119 Kan. 128, 237 Pac. 646, the question was whether defendant was a stockholder, a point not here involved, but in the opinion it was said:

"In this state, for reasons of public policy, the objective test is applied to determine liability. Banking is affected with a public interest, and all state banks are under regulatory supervision of the state bank commissioner. A double record of the issue, ownership and transfer of stock must be kept, one in the bank and one in the bank commissioner's office. This is done for the benefit of the bank, of its creditors, of taxing officials, and in the interest of the public, represented by the bank commissioner. It is their privilege to rely on the records, and the bank commissioner may not be embarrassed in winding up the affairs of an insolvent bank by an investigation of the fact of ownership, determination of which depends ultimately on a jury's estimate of the registered holder's testimony regarding his mental attitude. If stock should be issued or transferred to a person without his knowledge or authority, nothing more appearing, he would not be subject to the liabilities of a stockholder; but whenever such a person does a voluntary act which stamps the certificate with apparent validity and vitality, he is bound by the record, whatever his intention may have been. If he desires to avoid the consequences of ownership he must see to it that the records do not present him as a registered holder." (p. 130.)

In the case before us, Youst's name appeared as that of a stockholder. True, he says he did not discover he had been defrauded into becoming one until after the bank closed, but in that period of almost a year between the time he became a stockholder and the closing of the bank, there must have been many changes from day to day, if not in the persons of those who were depositors or creditors, at least in the amounts due in the individual cases, and that this is the case is evident from the failure of the defendant to plead otherwise. One of the purposes requiring the listing of bank stockholders (R. S. 9-148) is that persons expecting to become creditors of the bank may form some idea of the financial responsibility of the institution not only from its published statements of its condition, but from an inspection of its stockholders' list. Conceivably, a depositor may have confidence in one set of stockholders and an utter lack of it in another.

Taking up specifically the question whether the fact the stockholder was fraudulently induced to acquire his shares is a defense

in an action subsequently brought to recover his statutory liability, we note that in 2 Michie on Banks and Banking, page 161, it is said:

"The general rule is that a bank stockholder may not escape statutory liability by rescission after the bank becomes insolvent. To escape liability as shareholder, defendant must prove a rescission of the purchase of shares, and that he is not estopped to rely on it. So where, on the bank's refusal to rescind a stock purchase for fraud, the stockholder took no further action, there was no rescission relieving him from liability."

And in the same text, in discussing a like question with reference to fraudulent subscription, it is said on page 124:

"That a holder of bank stock was induced to become such by the fraud of officers or directors of the bank does not relieve him from individual responsibility for the bank's debts; nor does the fact that he has brought suit to rescind his subscription on the ground of fraud have that effect. And the same rule applies where the purchaser of bank stock attempts to set up fraud on the part of the seller as a reason for escaping the statutory liability. This does not relieve him from liability where there was no fraud perpetrated by the bank."

And with reference to purchase of stock in an insolvent bank, it is said, on page 126:

"As against creditors of a bank whose rights have become vested by its insolvency, purchasers of stock issued and transferred to them several months before, cannot rescind the purchase because the issue was invalid where an examination of the bank's books would have disclosed that it was in fact insolvent when the stock was issued, and a large part of the corporate indebtedness has been since incurred."

In 3 Zollmann on The Law of Banks and Banking is the following:

"Whatever may be the legal relations between the corporation and its members, it would be inequitable in those who have put the machine in motion, to escape responsibility to the public under a plea of fraud and deception." (p. 393.)

"The action is not one between the stockholder and the bank. The rights of creditors have intervened and must be protected. Whatever rights the stockholder may have for rescission of the contract against the bank, he has none as against the creditors. The latter have taken no part in the fraud, and should not be affected by it. They are under no obligation to ascertain what representations were made to the stockholders to induce them to become such." (p. 395.)

And in one of the latest texts published, Braver on Liquidation of Financial Institutions, the question is treated as follows:

"Questions as to alleged fraud inducing the purchase of the stock by the defendant and the right of the seller to sell the stock to the defendant are extraneous and immaterial. The liability depends only on whether the de-

fendant was a stockholder of record. After transfer of the stock, even though fraudulent, had been made on the books of the bank, the transferee is subject to the statutory liability to creditors and not the transferor, as the transaction induced through fraud is only voidable and not void, though the transferor may be liable to the transferee, in turn, for the consequences of the fraud." (p. 343.)

"To justify a rescission of the purchase of stock after the insolvency of the bank so as to escape the statutory liability, two conditions must concur: First, due diligence on the part of the purchaser in ascertaining the condition of the bank after the purchase and prompt action of rescission after the discovery of the insolvency of the bank; and, second, the bank must have incurred no new indebtedness since he became a stockholder. . . . Accordingly, if a considerable length of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid, in all of these cases the right to rescind will be denied, where the attempt is not made until the corporation has become insolvent." (pp. 344, 345.)

In 2 Morse on Banks and Banking it is said:

"It is no defense . . . that the transfer of stock was fraudulent, especially where no complaint was made until the bank failed eighteen months thereafter." (pp. 1436, 1437.)

In all of the above texts are citations of authority to which reference is made.

Appellant cites and relies on 1 Bolles Modern Law of Banking, 137, reading:

"A defrauded purchaser can rescind his purchase even after the bank's insolvency. To justify a rescission, the proof must be clear and the buyer's action prompt, after discovering the bank's insolvency, but if creditors are to suffer thereby, the rescission will not be permitted."

From all of the above it is readily deduced that, under the veiw most favorable to the appellant, before he could rely upon the claimed fraud as a defense, the burden would be upon him to prove not only that he had been defrauded, but that the bank had incurred no new indebtedness, and also that he had exercised due diligence after he became a stockholder to determine the condition of the bank; that having done so, he discovered the bank was insolvent and that he had been defrauded, and that upon such discovery he had moved promptly in an action to rescind. His answer fails to show anything about indebtedness of the bank, or that he exercised any

diligence to discover its financial condition; it shows affirmatively that he did not discover the fraud until two or three months after the bank closed, and while it is silent concerning any action to rescind his purchase of stock, it is undisputed that he brought no action and did not question his purchase in any action in court until his answer was filed over two years and nine months after he acquired the stock, and approximately twenty months after he learned of the claimed fraud against him. The answer did not state a defense.

Appellant also contends the trial court erred in not allowing his motion to have the Wagners made parties defendant. From what has been said, it is clear the plaintiff was not concerned in the belated effort of defendant to rescind his stock purchase from the Wagners, and there was no error in denying the motion.

The judgments of the trial court in both appeals are affirmed.